## IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

### Case No.: 12-61016-CV-ROSENBAUM/ SELTZER

| | |
|---|---|
| DAVID WRIGHT, individually, and on behalf of all others similarly situated,<br><br>　　Plaintiff,<br><br>*v.*<br><br>THE BERKLEY GROUP, INC., a Florida corporation, and VACATION OWNERSHIP MARKETING TOURS, INC., a Florida corporation<br><br>　　Defendants. | **FIRST AMENDED CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff David Wright now brings this First Amended Class Action Complaint against Defendants The Berkley Group, Inc. ("Berkley Group") and Vacation Ownership Marketing Tours ("VOMT") (collectively "Defendants") to stop Defendants' practice of making unsolicited telemarketing calls *en masse* that promise valuable consideration, such as a "free cruise," in exchange for answering a series of survey questions, and then not providing that consideration. Plaintiff, for his First Amended Class Action Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### NATURE OF THE ACTION

1.　　In an effort to increase Defendant Berkley Group's vacation package and property sales in various Florida locations, Berkley Group, working cooperatively with Defendant VOMT, intentionally and systematically placed (or directed to be placed on their behalf) robo-calls to thousands of consumers nationwide under the pretense that they were conducting a

1

public opinion poll on behalf of "Political Opinions of America." Defendants effectuated and

placed these phone calls using automatic dialing equipment without first obtaining consumers'

prior express consent to do so. Through its calls, Defendants promised consideration, such as a

free cruise, in exchange for call recipients answering a series of questions. However, Defendants'

political polling front is little more than a bait and switch to acquire fees later in the call. The

"results" of the political polling are not shared or used in any manner, and serve no purpose but

to keep consumers on the phone. In that vein, after consumers answer the questions, Defendants

do not provide the promised consideration in any form.

2.      By calling consumers without permission Defendants violated the Telephone

Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"), which prohibits unauthorized calls

to cell phones, and by refusing to follow through on their agreement to provide consumers with

promised consideration, breached their contract to provide consideration such as a free cruise.

Defendants caused consumers actual harm by invading their privacy, deducting minutes from

their respective wireless calling plans, and by not providing consumers with the promised

consideration or the value of the promised consideration. Defendants further caused harm

because consumers frequently have to pay their cell phone service providers for the receipt of

such wireless calls.

3.      In order to address these injuries, Plaintiff now brings this class action on his own

behalf and on behalf of a two classes of similarly situated individuals, seeking an injunction

requiring Defendants to cease making (or directing to be made on their behalf) unsolicited phone

calls without express written consent, an award of statutory damages, and an award of actual,

incidental, and consequential damages, together with costs and reasonable attorneys' fees.

**PARTIES**

2

4.      Plaintiff David Wright is a natural person and citizen of the State of North Carolina.

5.      Defendant Berkley Group, Inc. is a corporation incorporated and existing under the laws of the State of Florida, with its primary place of business located at 3015 N Ocean Boulevard, Fort Lauderdale, Florida 33308. Defendant does business throughout the State of Florida and nationwide.

6.      Defendant Vacation Ownership Marketing Tours, Inc., is a corporation incorporated and existing under the laws of Florida, with its primary place of business located at 2419 E. Commercial Boulevard, Suite 100, Fort Lauderdale, Florida 33308. Defendant does business throughout the State of Florida and nationwide. Defendant VOMT is the primary marketing vendor for Berkley Group, and through such contractual relationship, Berkley Group expressly acknowledges that VOMT will utilize affiliated companies in carrying out its duties to The Berkley Group.

7.      Separate and apart from Defendants' present marketing and sales duties and obligations to each other, Defendants relationship is further intertwined, in that, Defendants have previously entered into agreements with each other for the purchase and sale of assets related to various vacation and timeshare properties.

**JURISDICTION AND VENUE**

8.      This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the TCPA.

9.      Venue is proper in this District under 28 U.S.C. 1391(b)(2) because a substantial part of the events giving rise to the claims asserted herein occurred in this District and Defendants have their primary places of business here.

Case: 1:13-cv-00903 Document #: 32 Filed: 10/29/12 Page 4 of 13 PageID #:163

**FACTS COMMON TO ALL COUNTS**

10.     Defendant Berkley Group is in the business of selling, developing, managing and promoting vacation timeshares, along with other travel products such as cruise trips.

11.     Defendant VOMT, as well as the agents and/or affiliates it employs, acts on behalf, and for the benefit, of Defendant Berkley Group by providing Berkley Group with lead generation[1] and other marketing services in efforts to increase Berkley Group's vacation rental and property sales. Defendant Berkley Group controls the marketing efforts of Defendant VOMT, in that, VOMT is required to work cooperatively, and coordinate its marketing efforts, with Berkley Group at all times.

12.     As VOMT is directly compensated by Berkley Group for each lead generated that ultimately results in a sale, Berkley Group and VOMT mutually benefit from each other's marketing tactics.

13.     In the pursuit of increased sales, Defendants turned to a cheap and efficient method of reaching hundreds of thousands of consumers nationwide: mass robo-call telemarketing. Defendants acquired or randomly generated lists of phone numbers and dialed those phone numbers using automated dialing equipment. The numbers called by Defendants included both cellular telephone and landline numbers. Defendants placed (or directed to be placed for their own benefit and on their behalf), the robo-calls from numerous telephone numbers with area codes from around the country.

14.     Each call made by (or directed to be made by) Defendants was done without authorization and without the prior express consent of the call recipient.

15.     Specifically, during each robo-call, Defendants, or one of Defendants' agents,

---

[1]     Lead generation is a marketing term used to describe the generation of consumer interest or inquiry into products or services of a business.

4

affiliates, and/or employees working on Defendants' behalf, identified themselves as "Political Opinions of America" ("POA") and played a recording informing the call recipient that he or she would receive consideration, such as a "free cruise," in exchange for answering a series of political related questions such as "How would you rate the job that President Obama is doing?" However, these questions are only the first step in scheme to engage consumers, make them believe they will receive free goods or services as a result of answering survey questions, and eventually "upsell" them into paying additional fees to receive the products or services.

16.    POA, however, is nothing more than a name utilized by Defendants to shield their actual role in sending (or causing to be sent) and profiting from the robo-calls made to Plaintiff and the Class.

17.    POA describes itself as working with "many of [sic] Non Profit and Political research organizations in conduction [sic] surveys and opinion polls on the nations top issues. POA is dedicated to provide [sic] accurate Political marketing research and information services using state of the art polling and survey methods. We believe citizens should have the right to voice their opinions on theses [sic] important issues."[2]

18.    To the contrary, Defendants' shell political polling company does not collect data or work with non-profit research organizations.

19.    POA's website also describes its promotional methods: "In some of [sic] surveys conducted promotions and giveaways may be available on certain survey campaigns to offer additional incentives for survey takers. Some of the current programs include cruise and vacation offers as well as gift card giveaways."[3] The "incentives" are in fact the *only* reason for the call as the sales pitch related to the offers is the central avenue for Defendants to obtain fees from

---

[2] http://www.politicalopinionsofamerica.org/
[3] http://www.politicalopinionsofamerica.org/

consumers.

20.     The "free " offers made on each call are described as just that: free. The robo-call

makes no mention of additional fees, requirements or steps, other than answering a series of

survey questions. The call recipient is told that he or she is only required to answer the upcoming

survey questions and thereafter will receive the promised consideration.

21.     Once a consumer agrees to answer the questions in exchange for the

consideration, and subsequently answers the questions, he or she does not receive the promised

consideration; rather, he or she is subjected to various sales pitches aimed at obtaining fees.

Accordingly, the entire phone call from the initial offer of free services, to the political questions,

and finally the "upsells" seeking fees, are not real or legitimate offers or services, and are wholly

fabricated by Defendants to deceive and obtain money from consumers.

22.     Consumers who received robo-calls from Defendants did not, in any capacity,

consent to receive phone calls, text messages, emails, or any other form of promotional

advertising from Defendants. Instead, Defendants placed (or directed to be placed for their

benefit and on their behalf) random calls from a purchased or randomly generated list of phone

numbers without authorization.

23.     Defendants each were aware that the above described robo-calls were being made

either by them directly, or on their behalf, and that the robo-calls were being made to consumers

who had not consented to receive them.

24.     Moreover, as VOMT is paid directly by Berkley Group for all sales generated by

VOMT's marketing efforts, both VOMT and Berkley Group directly benefit from the calls that

Plaintiff and the putative Class receive.

25.     Plaintiff Wright was one of thousands of consumers who repeatedly received

unwanted telemarketing calls from Defendants (or calls made for their benefit and on their behalf). On or around May 2012, Plaintiff Wright received at least four calls from Defendants, including calls from phone number (360) 529-6912, on his cellular telephone. When Plaintiff answered the phone, he heard a robo-call promoting a free cruise in exchange for answering a series of questions. The robo-call stated that the questions and call were on behalf of "Political Opinions of America." Plaintiff thereafter answered the provided questions and was transferred to a live operator allegedly located in Florida representing to be from "Caribbean Cruise Lines." The operator did not provide him with a free cruise.

26. Defendant VOMT and/or one of its agents, affiliates, and/or employees working on its behalf, effectuated the robo-call to Plaintiff and the Class at the direction of Defendant The Berkley Group.

27. Plaintiff never consented, in any form, to receive phone calls or be contacted in any manner by Defendants.

## CLASS ALLEGATIONS

28. Plaintiff David Wright brings this action pursuant to Fed. Civ. P. 23(b)(2) and (3) on behalf of himself and two classes of similarly situated individuals, defined as follows:

**TCPA Class**

All persons in the United States who received one or more calls on their cellular telephones made by Defendants (or made by entities acting on Defendants' behalf) that purported to offer a survey, and who never provided their prior express consent to receive such calls.

**Breach of Contract Class**

All persons in the United States who received a telephone call made by Defendants (or made by entities acting on Defendants' behalf) that purported to offer a survey, who answered the survey questions in exchange for promised consideration, and who did not subsequently receive that consideration.

7

Excluded from the Classes are 1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current and former employees, officers, and directors, 2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, 3) persons who execute and file a timely request for exclusion, and 4) the legal representatives, successors, or assigns of any such excluded person.

29.     Common questions of law and fact exist as to all members of the Classes and such questions predominate over any questions affecting Plaintiff or individual members of the Classes.  Common questions for the Classes include but are not limited to:

(a)     whether Defendants' conduct violated the TCPA:

(b)     whether members of the TCPA Class are entitled to treble damages based on the willfulness of Defendants' conduct;

(c)     whether members of the TCPA Class provided prior express consent to receive robo-calls from Defendants;

(d)     whether Defendants utilized an automated dialing system in placing phone calls to members of the TCPA Class;

(e)     whether Defendants' conduct of promising consideration in exchange for answering survey questions constitutes a contract between Plaintiff and Breach of Contract Class members on the one hand, and Defendants on the other;

(f)     whether by not providing Plaintiff and members of the Breach of Contract Class with the promised consideration after they answer the survey questions constitutes a breach of contract.

8

30.     Plaintiff will fairly and adequately protect the interests of the other members of

the Classes, because his claims are typical of the other members of the Classes, and he has

retained counsel competent and experienced in similar class action litigation. Neither Plaintiff

nor his counsel have any interest adverse to those of the other members of the Classes.

31.     A class action is superior to other available methods for fairly and efficiently

adjudicating this controversy because, among other things, (a) joinder of all members of the

Classes is impracticable, and (2) many members of the Classes cannot vindicate their rights by

individual suits because their damages are small relative to the burden and expense of litigating

individual actions.

**COUNT I**
**Violation of the TCPA, 47 U.S.C. § 227**
**(On behalf of Plaintiff and the TCPA Class)**

32.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth

herein.

33.     Defendants made (or directed to be made on their behalf) unsolicited calls to a

purchased or randomly generated list of wireless telephone numbers belonging to Plaintiff and

other members of the TCPA Class. Defendants placed (or directed to be placed for their benefit

and on their behalf) those calls using equipment that had the capacity to store or produce

telephone numbers to be called using a random or sequential number generator, and to dial such

numbers.

34.     The phone calls were made *en masse*—were often disconnected before being

answered by the TCPA Class—and were all made without the prior express consent of Plaintiff

and the other members of the TCPA Class.

35.     Through its conduct described herein, Defendants have violated 47 U.S.C. §

9

227(b)(1)(A)(iii). As a result of Defendants' unlawful conduct, the members of the TCPA Class

suffered an invasion of privacy and actual damages by, *inter alia*, having to pay their respective

wireless carriers for the minutes spent on each call where applicable and, under 47 U.S.C. §

227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 for each such violation.

36.    Should the Court determine that Defendants' misconduct was willful and

knowing, the Court may, pursuant to section 227(b)(3)(C), treble the amount of statutory

damages recoverable by Plaintiff and the other members of the TCPA Class.

## COUNT II
### Breach of Contract
### (On behalf of Plaintiff and the Breach of Contract Class)

37.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth

herein.

38.    By and through its robo-calls to Plaintiff and Breach of Contract Class members,

Plaintiff and Breach of Contract Class members entered into an enforceable contract with

Defendants wherein Defendants promised to provide valuable consideration (in Plaintiff's case a

free cruise) in exchange for answering a series of survey questions.

39.    Plaintiff and Breach of Contract Class members entered into the contract in

reliance on Defendants' promises and fully performed their contractual obligations by answering

the survey questions.

40.    Defendants failed to perform its contractual obligations in that it failed to provide

the promised consideration after Plaintiff and Breach of Contract Class Members completed the

survey questions (in Plaintiff's case, not providing him with a free cruise). From the outset,

Defendants' over-the-phone statements constituted a false offer, through which Defendants never

intended to provide Plaintiff and Breach of Contract Class Members with actual products or

services.

41.     Plaintiff and the Class have suffered actual harm and damages as a direct result of

Defendants' breach in the form of not receiving the promised consideration, or the value of the

promised consideration, specifically in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff David Wright, individually and on behalf of the Classes, prays

for the following relief:

1.     An order certifying the Classes as defined above; appointing Plaintiff
       David Wright as the Representative of the Classes; and appointing his
       counsel as Class Counsel;

2.     An award of actual and statutory damages;

3.     An injunction requiring Defendants to cease making unsolicited phone
       calls without express written consent;

4.     An award of reasonable attorneys fees and costs; and

5.     Such further and other relief the Court deems reasonable and just.

## Jury Demand

Plaintiff requests trial by jury of all claims that can be so tried.



                                                Respectfully submitted,

Dated: October 29, 2012                         By: /s/ Rafey S. Balabanian
                                                    One of Plaintiff's Attorneys



Scott D. Owens
LAW OFFICE OF SCOTT D. OWENS, ESQ.

664 E. Hallandale Beach Blvd.
Hallandale, Florida 33009
Telephone: 954-589-0588
Facsimile: 954-337-0666
Scott@ScottDOwens.com

Rafey S. Balabanian (*Pro Hac Vice*)
Eve-Lynn J. Rapp (*Pro Hac Vice*)
EDELSON MCGUIRE, LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378
rbalabanian@edelson.com
erapp@edelson.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I, Scott D. Owens, an attorney, hereby certify that on October 29, 2012, I served the above and foregoing *Plaintiff's First Amended Class Action Complaint*, by causing true and accurate copies of such papers to be sent to all counsel of record via the Court's CM/ECF system.

By: /s/ Scott D. Owens_____