**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 12-CV-61016-ROSENBAUM/SELTZER**

DAVID WRIGHT, individually, and on behalf
of all others similarly situated,

      Plaintiff,

                v.

THE BERKLEY GROUP, INC. a Florida
corporation, and VACATION OWNERSHIP
MARKETING TOURS, INC., a Florida
corporation,

      Defendants.

**PLAINTIFF'S OPPOSITION TO DEFENDANT**
**VACATION OWNERSHIP MARKETING TOURS, INC.'S**
**MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ........................................................2

I.  Wright's Initial Complaint Against Berkley and Subsequent Evidence of
    VOMT's Involvement. ...........................................................................................2

II. Wright files the FAC naming VOMT as a Defendant. ..........................................3

ARGUMENT .......................................................................................................................4

I.  The FAC Specifically Delineates VOMT'S Role in Effectuating the Robocalls
    and Falsely Promising Free Cruises to Class Members—No Supposed
    "Lumping" Excuses VOMT's Liability Here. .......................................................5

II. The FAC Details the Consideration Offered as Well as VOMT's Liability for
    Failing to Provide Wright with the Agreed-Upon Free Cruise. .............................7

    A.  Wright plainly alleges consideration—answering the Defendants' political
        survey in exchange for a free cruise. .............................................................7

    B.  Wright plainly identifies the party that called him. .......................................9

III. VOMT's Assertion that the Contract to Provide a Free Cruise is Void Due to the
     Illegality of the Phone Call that Lead to it Being Offered is so Meritless that its Inclusion
     in its Brief Undercuts the Credibility of VOMT's Other Arguments. ................. 10

IV. VOMT's Assertions that it Has No Liability for Calls Made By its "Agents,
    Affiliates,  and/or Employees Working on its Behalf" is Wrong—All Parties Who
    Cause Unauthorized Calls To Be Made Are Liable Under The TCPA. ................. 12

V.  VOMT's Attacks on Class Certification are Premature, Fail to Show that Commonality is
    Defeated By Differences in the Type of Incentive Falsely Offered or by the Presence of
    Different State Laws, and Neglect to Articulate Even a Single Individualized Issue that
    Would Prevent Certification of Wright's TCPA Claims. ...................................... 15

    A.  Wright is not required to prove class certification at the pleadings stage. ...................... 15

    B.  VOMT fails to cite any differences in state laws or in the type of consideration
        provided that would defeat certification. ...................................................... 16

    C.  Wright's TCPA claims are similarly certifiable. .......................................... 18

CONCLUSION .................................................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**

*Account. Outsourcing, LLC v. Verizon Wireless*, 329 F.Supp.2d 789 (M.D.La. 2004)...................... 13

*Agne v. Papa John's Int'l, Inc.*, No. C10-1139-JCC, 2012 WL 5473719
    (W.D. Wash. Nov. 9, 2012) .................................................................................... 20

*Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768 (11th Cir. 2011)........................................ 19

*Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248 (11th Cir. 2003)............................................ 18

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ...........................................................................................4

*Ashland Hosp. Corp. v. Int'l Bhd. of Elec. Workers Local 575*, 807 F. Supp. 2d 633
    (E.D. Ky. 2011) ........................................................................................................ 14

*Beaudin v. Chase Home Fin. LLC*, No. 6:12-CV-1084-ORL-31, 2012 WL 4903317
    (M.D. Fla. Oct. 16, 2012).........................................................................................7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)................................................................................4

*Bentley v. Bank of Am., N.A.*, 773 F. Supp. 2d 1367 (S.D. Fla. 2011)....................................................5

*Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316 (S.D. Fla. 2012)................................. 12, 19

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).........................................................16-17

*Buslepp v. Improv Miami, Inc.*, No. 12-60171, 2012 WL 4932692
    (S.D. Fla. Oct. 16, 2012) ...........................................................................9, 12, 18,19

*CE Design v. Beaty Const., Inc.*, No. 07 C 3340, 2009 WL 192481 (N.D. Ill. Jan. 26, 2009)............ 20

*Charvat v. EchoStar Satellite LLC et al.*, 630 F.3d 459 (6th Cir. 2010) ........................................... 12

*Christopher v. Harbury*, 536 U.S. 403 (2002)......................................................................................4

*Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Group Ltd.*, No. 05-60080-CIV,
    2011 WL 1233126 (S.D. Fla. Mar. 30, 2011) .....................................................5-6

*Dorman v. Publix–Saenger–Sparks Theatres*, 135 Fla. 284 (1938).......................................................8

*Drossin v. Nat'l Action Fin. Servs., Inc.*, No. 07-61873, 2008 WL 5381815
    (S.D. Fla. Dec. 19, 2008)......................................................................................... 15

*Ekonomou v. Glenn Wright Const. & Dev., Inc.*, 30 So. 3d 660 (Fla. Dist. Ct. App. 2010) .............. 11

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005).................................... 18

*Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334 (S.D. Fla. 2012)..........................................3

*Hewlett-Packard Co. v. CP Transp. LLC*, No. 12-21258-CIV, 2012 WL 4795766
    (S.D. Fla. Oct. 9, 2012) ....................................................................................7

*Hill v. White*, 321 F.3d 1334 (11th Cir. 2003) .................................................................4

*Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802 (N.D. Ill. 2008) .......................... 20

*Holtzman v. Caplice*, No. 07-cv-7279, 2008 WL 2168762 (N.D. Ill. May 23, 2008)........................ 16

*In re Checking Account Overdraft Litig.*, 275 F.R.D. 666 (S.D. Fla. 2011) ........................ 17

*In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253 (S.D. Cal. 2012) ........................ 13

*Indianer v. Franklin Life Ins. Co.*, 113 F.R.D. 595 (S.D. Fla. 1986)................................... 16

*Jackson v. BellSouth Telecommuns.*, 372 F.3d 1250 (11th Cir. 2004) ....................................6

*Jackson v. BellSouth Telecommuns., Inc.*, 181 F. Supp. 2d 1345 (S.D. Fla. 2001) .............................6

*Jackson v. Hosp. Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577 (11th Cir. 1986)................................ 6, 9

*Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642 (W.D. Wash. 2007)........................................ 20

*Kazemi v. Payless Shoesource*, Case No. C09-5142MHP, 2010 WL 963225
    (N.D. Cal. 2010) ........................................................................................ 14

*Kelly v. SabreTech Inc.*, 195 F.R.D. 48, 52 (S.D. Fla. 1999)........................................ 16

*Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004) ........................................ 16

*Kleiner v. First Nat'l Bank of Atlanta,* 97 F.R.D. 683 (N.D. Ga. 1983)........................................ 16, 18

*Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165 (N.D. Cal. 2010) ................................ 6, 13

*Lehman Bros. Holdings, Inc. v. Hirota*, No. 806 CV 2030T24MSS, 2007 WL 1471690
    (M.D. Fla. May 21, 2007) ................................................................................9

*Leszczynski v. Allianz Ins.*, 176 F.R.D. 659 (S.D. Fla. 1997)................................................. 17

*Local No. 234 of United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting, Indus. of U.S. & Canada v. Henley & Beckwith, Inc.*, 66 So. 2d 818, 821 (Fla. 1953)................ 11

*Manfred v. Bennett Law, PLLC*, No. 12-CV-61548, 2012 WL 6102071 (S.D. Fla. Dec. 7, 2012).................................................................................................... 6, 7, 13

*Manno v. Healthcare Revenue Recovery Grp., LLC*, No. 11-61357, 2012 WL 4192987 (S.D. Fla. Sept. 18, 2012) ......................................................................................................... 15

*Martin v. Cellco P'ship*, No. 12 C 5147, 2012 WL 5048854 (N.D. Ill. Oct. 18, 2012) ..................... 14

*Mey v. Pinnacle Sec., LLC*, No. 5:11CV47, 2012 WL 4009718 (N.D.W. Va. Sept. 12, 2012).... 13, 14

*Miller v. Foremost Ins. Co.*, 511 F.3d 1300 (11th Cir. 2008) ................................................................. 15

*Motisola Malikha Abdallah v. Coca-Cola Co.,* No. 1:98-cv-3679, 1999 WL 527835 (N.D. Ga. July 16, 1999) ............................................................................................................. 16

*Neiman v. Provident Life & Accident Ins. Co.*, 217 F. Supp. 2d 1281 (S.D. Fla. 2002)...................... 11

*Newport v. Dell Inc.*, No. CIV 08-096, 2009 WL 1636248 (D. Ariz. June 9, 2009).......................... 16

*Penzer v. Transp. Ins. Co.*, 545 F.3d 1303 (11th Cir. 2008) ........................................................... 19, 20

*Peter Strojnik, P.C. v. Singalife, Inc.*, No. CV-08-1116-PHX-FJM, 2009 WL 605411 (D. Ariz. Mar. 9, 2009) .............................................................................................................. 6

*Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266 (11th Cir. 2000) ........................................ 16, 17

*Rahman v. Smith & Wollensky Rest. Grp.,* Inc., No. 06 Civ. 6918 (S.D.N.Y. Jan. 16, 2008)............. 16

*Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*, 281 F.R.D. 327 (E.D. Wis. 2012)................................................................................................................ 19

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) ..................................................... 14

*Senter v. JPMorgan Chase Bank, N.A.*, 810 F. Supp. 2d 1339 (S.D. Fla. 2011) .................................. 8

*Silbaugh v. Viking Magazine Servs.*, 278 F.R.D. 389 (N.D. Ohio 2012) ............................................. 20

*Smith v. Microsoft Corp.*, No. 11-cv-1958, 2012 WL 2975712 (S.D. Cal. July 20, 2012) ................. 20

*Strickler v. Bijora, Inc.*, No. 11 CV 3468 (N.D. Ill. Oct. 30, 2012)..................................................... 20

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ......................................................................... 4, 9

*Thomas v. Taco Bell Corp.*, No. SACV 09-01097-CJC, 2012 WL 3047351
  (C.D. Cal. June 25, 2012)............................................................................................. 14

*United Realty Corp. v. Green Valley Acres, Inc., II*, 792 F.2d 1555 (11th Cir. 1986)........................ 11

*Vega v. T-Mobile USA*, 564 F.3d 1256, (11th Cir. 2009)................................................... 17

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ...................................................... 19

## Statutes & Rules

47 U.S.C. § 227, *et seq*.....................................................................................................*passim*

Fed. R. Civ. P. 8 .............................................................................................................. 4, 6, 7

Fed. R. Civ. P. 10 ................................................................................................................6

Fed. R. Civ. P. 12 ......................................................................................................... 4, 7, 9

Fed. R. Civ. P. 15 ................................................................................................................3

Fed. R. Civ. P. 23 .............................................................................................................. 16

Fed. R. Civ. P. 26 ................................................................................................................3

## Miscellaneous

WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE, CIVIL 3D § 1798.............................. 16

## INTRODUCTION

Try as it may, Defendant Vacation Ownership Marketing Tours Inc. ("VOMT") can't deny its role in having unlawfully called and falsely promised free vacation cruises to Plaintiff David Wright ("Wright" or "Plaintiff") and numerous other unwitting consumers. Indeed, as the marketing and touring company that co-Defendant The Berkley Group ("Berkley") contracted with to market Berkley's Florida timeshares—namely by recruiting travelers and funneling them to Berkley's resort properties—the First Amended Complaint ("FAC") details VOMT's specific role in effectuating the unlawful robocalls and making hollow promises of "free cruises" to the Class on behalf of itself and Berkley.

Rather than acknowledge its liability, VOMT seeks both dismissal of the complaint and a denial of class certification, attacking the FAC on just about every ground reasonable lawyering can conjure—and then some. For its chief complaint, VOMT asserts that the FAC's claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA"), and for breach of contract, lump its conduct in with Berkley's acts, so that it supposedly isn't clear to VOMT the supposed misconduct that is being ascribed to it. This of course is untrue, as the FAC carefully details the Parties' business arrangement, delineates their duties, and explains their mutual profiteering from VOMT's steering of potential timeshare purchasers to Berkley's Florida resort destinations. Given that VOMT contracted with Berkley regarding the specific marketing challenged in this case, it can hardly argue that it doesn't understand its role or the basis for its inclusion in these proceedings.

VOMT's remaining complaints are similarly devoid of merit. VOMT asserts: (1) that the FAC doesn't allege consideration or which Party breached the contract to provide Wright with a free cruise, (2) that any contract formed is void due to the illegality of the call, (3) that VOMT has no liability for calls it did not direct or control, and (4) that class certification fails because Defendants

may have duped customers into responding to their supposed political surveys by offering them other enticements apart from supposedly free cruises, because different state laws supposedly apply, and because adjudicating TCPA claims will require highly individualized—though mysteriously unidentifiable—inquiries.

Of course, none of VOMT's scattershot arguments hit their targets. The FAC explains how VOMT (or its agents, affiliates, and/or employees) sent the robocalls to the Class on behalf of Berkley and that these calls violated the TCPA. Wright further explains how he and the class members were promised free cruises and other incentives in exchange for completing the Defendants' political surveys. Both of these claims are amenable to class certification, which will be confirmed following appropriate discovery as set forth in the Court's November 5, 2012 Scheduling Order. (Dkt. 36.) In the end, while VOMT's attempt to twist this otherwise simple case into a confusing legal morass is, in light of the stakes, perhaps understandable, it fails to present any credible basis for dismissing the case or denying class certification—especially before it answers a single allegation or provides any relevant discovery.

This Court should have little trouble denying VOMT's Motion to Dismiss accordingly.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Wright's Initial Complaint Against Berkley and Subsequent Evidence of VOMT's Involvement.

On May 25, 2012, Wright filed his Class Action Complaint ("Complaint") against Defendant Berkley, a Florida company that sells vacation timeshares. (Dkt. 1 ¶ 9.) Wright alleged that Berkley, in an effort to increase sales of its vacation properties, violated the TCPA by making mass robocalls to consumers nationwide, without their permission, through a shell political polling company, Political Opinions of America ("POA"). (*Id.* ¶¶ 10, 12.) Wright further alleged that through its robocalls, Berkley (identifying itself as POA), entered into contracts with Plaintiff and class

members—promising them valuable consideration such as free cruises in exchange for answering a series of survey questions—which it then breached, by never providing the free cruise and instead attempting to upsell consumers into paying additional fees. (*Id.* ¶¶ 15-19.)

Berkley answered Wright's Complaint on July 13, 2012. (Dkt. 9.) Rather than deny its participation in the alleged calls, Berkley indicated that a different company was responsible for actually making the phone calls at issue. (Dkt. 9 ¶ 11.) On August 20, 2012, Berkley provided Wright with its Rule 26(a)(1) Initial Disclosures, indicating that VOMT (or one of its agents, affiliates, and/or employees) had made the calls. Berkley also attached to its Initial Disclosures a "Marketing Agreement" between Berkley and VOMT, which showed that VOMT was responsible for bringing leads to Berkley's Florida properties—where Berkley would then try to sell them timeshares.[1] Subject to certain conditions, VOMT would then receive a percentage of the sales for each timeshare generated by its efforts. The Marketing Agreement specifically required that VOMT, as the provider of marketing services, fully indemnify Berkley for any damages resulting from its violation of the applicable laws, or from its breach of the agreement.

## II. Wright files the FAC naming VOMT as a Defendant.

On August 27, 2012, Wright propounded his discovery on Berkley, seeking further information about, *inter alia*, Berkley's marketing relationship with VOMT. Berkley's responses confirmed VOMT's direct involvement in the calls, and Wright sought to file the FAC, with Berkley's consent, in accordance with Federal Rule 15(a)(2). (Dkts. 31, 32.)

---

[1]   Although extrinsic evidence is generally not considered at the motion to dismiss stage, the Court can consider the Marketing Agreement between Berkley and VOMT at this time because: (i) Wright explicitly references the Marketing Agreement in his Amended Complaint (*see* FAC ¶ 6), (ii) Defendants—as Parties to the agreement—cannot dispute its authenticity, and (iii) the Marketing Agreement is central to Wright's allegations. *See Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1338 (S.D. Fla. 2012) (extrinsic evidence may be considered where document is referenced in pleadings and no party disputes authenticity). Further, Berkley and Wright previously made the Marketing Agreement known to the Court when, for example, seeking leave to file the FAC. (*See e.g.* Dkts. 25, 27, 28, 31.)

The FAC describes both Berkley's and VOMT's respective roles in the alleged misconduct. Specifically, the FAC explains that Berkley retained VOMT to be its primary marketing vendor, and that through their contractual relationship, VOMT was responsible for generating leads for Berkley's timeshare rentals and sales. (FAC ¶¶ 6, 11.) The FAC also explains that while Defendant "VOMT and/or one of its agents, affiliates, and/or employees working on its behalf, effectuated the robocalls to Plaintiff and the Class," such acts were at all times done at the direction of Defendant Berkley. (*Id.* ¶¶ 11, 26.) The FAC further states that Defendants at all times worked cooperatively with each other and that they "mutually benefited from each other's marketing tactics." (*Id.* ¶¶ 11, 12.)

On December 4, 2012, and notwithstanding co-Defendant Berkley's decision to file an answer, VOMT filed the instant motion to dismiss. (Dkts. 43, 44.)

## ARGUMENT

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in the Complaint as true and take them in the light most favorable to Plaintiff. *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). To satisfy the pleading requirements of Rule 8, a complaint must simply give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). While federal pleading requires more than a "formulaic recitation of elements" or "naked assertions," a complaint survives dismissal where it states a plausible claim for relief, *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), or where it allows the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1940; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The FAC readily meets this standard.

I. **The FAC Specifically Delineates VOMT'S Role in Effectuating the Robocalls and Falsely Promising Free Cruises to Class Members—No Supposed "Lumping" Excuses VOMT's Liability Here.**

VOMT first argues that the FAC improperly "lumps" Defendants together, such that VOMT can't tell whether its being accused of "working together" with Berkley to violate the TCPA "or whether one Defendant was directing the other Defendant to perform the alleged violation"—a supposedly meaningful distinction, so VOMT says. (Mot. at 5-6.)[2]

The FAC, however, distinctly lays out each Defendant's role. Wright alleges that Berkley is "in the business of selling, developing, managing and promoting vacation timeshares, along with other travel products" (FAC ¶ 10), and that, per their agreement, "Defendant VOMT…acts on behalf, and for the benefit, of [] Berkley [] by providing Berkley [] with lead generation and other marketing services [] to increase Berkley['s] vacation rental and property sales." (*Id.* ¶¶ 6, 11.) Wright specifically explains that "VOMT and/or one of its agents, affiliates, and/or employees working on its behalf, *effectuated the robo-call to Plaintiff and the Class at the direction of Defendant The Berkley Group*" (*id.* ¶ 26) (emphasis added), and that, Berkley "controls the marketing efforts of [] VOMT," by requiring VOMT "to work cooperatively, and coordinate its marketing efforts, with Berkley Group at all times." (*Id.* ¶ 11.) Hence, the FAC makes clear that VOMT effectuated the robocalls to Wright and the other class members and that it did so at Berkley's direction.

VOMT's authorities are thus inapposite. Unlike the instant case—where VOMT is specifically alleged to have made the calls—the complaint at issue in *Bentley v. Bank of Am., N.A.*, 773 F. Supp. 2d 1367, 1374 (S.D. Fla. 2011) failed to "identify which defendant made each call." VOMT's other case, *Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Group Ltd.*, is likewise inapposite. Dismissal in that matter was warranted as to defendant CFS-USA because, though the plaintiff

---

[2]    Although VOMT neglects to cite it, in substance Defendant complains that the FAC doesn't comply with Rule 10(b), which requires that distinct claims be stated separately where doing so "would promote clarity."

included over 800 hundred references to "separate corporations with no apparent contractual or legal duties" to each other, there wasn't a single "independent allegation directed to CFS-USA." No. 05-60080-CIV, 2011 WL 1233126, at *2 (S.D. Fla. Mar. 30, 2011). By contrast, the FAC specifically explains VOMT's role in effectuating the calls.

Even if the FAC did lump the Defendants together—which it doesn't—courts routinely allow for some degree of combined allegations where defendants have acted in concert, so long as each defendant's respective role is particularly defined. *See e.g. Jackson v. BellSouth Telecommuns., Inc.*, 181 F. Supp. 2d 1345, 1362 (S.D. Fla. 2001) *aff'd sub nom. Jackson v. BellSouth Telecommuns.*, 372 F.3d 1250 (11th Cir. 2004) (because "specific allegations …clarif[ied] …who made the statements to the plaintiffs, supposedly "lumped" allegations were "not fatal to the overall claim."); *see also Peter Strojnik, P.C. v. Singalife, Inc.*, No. CV-08-1116, 2009 WL 605411, at *4 (D. Ariz. Mar. 9, 2009) (finding use of the term "Defendants" sufficient under Rule 8(a)(2) "because it puts all Defendants on notice that each defendant is being sued for violating the TCPA."); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (upholding TCPA complaint with nearly identical allegations against multiple defendants where allegations did not distinguish roles). Thus, even Wright's allegations that claim "Defendants" are responsible for the unauthorized calls and for breaching their agreements to provide free cruises are acceptable under Rules 8(a) and 10(b).

Indeed, just days ago another court in this District upheld "commingled" allegations that one defendant was "acting on behalf of" the other in violation of TCPA. *See Manfred v. Bennett Law, PLLC*, No. 12-CV-61548, 2012 WL 6102071, at *3 (S.D. Fla. Dec. 7, 2012) (Hon. Seitz, P.) In *Manfred*, the plaintiff sued Bennett Law, a collection firm, as well as Wal-Mart, an alleged creditor, for harassing phone calls. *Id.* In rejecting the argument that plaintiff "impermissibly commingled allegations against both [d]efendants in a single count" Judge Seitz held that, "[p]laintiff, however,

6

has pled that [d]efendant Bennett Law was acting on behalf of [d]efendant Wal–Mart and, thus, both violated the TCPA through Bennett Law's actions. Thus, Plaintiff has pled joint and several liability against both Defendants. Consequently, Plaintiff has adequately pled his claim." *Id.* Thus, the Court should similarly hold that Wright has pled joint and several liability against Defendants here.[3]

With the infirmities in VOMT's "lumping" arguments exposed, this Court should refuse to dismiss the FAC on such grounds.

## II. The FAC Details the Consideration Offered as Well as VOMT's Liability for Failing to Provide Wright with the Agreed-Upon Free Cruise.

Over a rambling and oft-repetitive three pages, VOMT raises two attacks on Wright's breach of contract claim. First, VOMT pretends that the FAC doesn't set forth the consideration exchanged between the Parties, complaining that a supposed laundry list of details—ranging from how the calls were made, to the details of the "free cruise" and a host of other (largely irrelevant) facts—are missing. (Mot. at 7.) Second, VOMT claims that it can't tell whether Wright is claiming that VOMT owes him a free cruise (he of course is). (*Id.* at 8-9.) Neither position has merit.

### A. Wright plainly alleges consideration—answering the Defendants' political survey in exchange for a free cruise.

First, VOMT asserts that Wright was required to have pled a laundry list of supposedly missing facts regarding the alleged consideration exchanged in the agreement, including:

> how the phone calls were made, who made the calls, which Party Plaintiff believes he made a contract with…what terms were provided to Plaintiff….what the consideration was, the details of the "free cruise"…what actions or conduct Plaintiff took to obtain or accept the valuable consideration"…and what happened at the time of, or after, acceptance that resulted in a breach.

---

[3]    As noted in *Manfred*, VOMT could have, but doesn't, move for a more definite statement under Rule 12(e). *See Manfred*, 2012 6102071, at *1, fn 1. Perhaps this is because "this is not the kind of multiple claim/multiple defendant pleading which requires a more definite statement." *Hewlett-Packard Co. v. CP Transp. LLC*, No. 12-21258-CIV, 2012 WL 4795766, at *2 (S.D. Fla. Oct. 9, 2012); *see also Beaudin v. Chase Home Fin. LLC*, No. 6:12-CV-1084-ORL-31, 2012 WL 4903317, at *2 (M.D. Fla. Oct. 16, 2012) (holding the combined allegations satisfied Rule 8(a)). Here, there are only two Defendants and the FAC plainly describes how each of them violated the TCPA and breached their contracts with the class members.

(Mot. at 7.) VOMT further asserts that "consideration 'such as' a 'free cruise' does not sufficiently explain what each call recipient was actually offered…." (*Id*.)

Such arguments fall apart. How the calls were made and who made them specifically are irrelevant to the consideration inquiry (or to any other element of a breach of contract claim). Long ago, the Florida Supreme Court explained consideration:

> It is not necessary that a benefit should accrue to the person making the promise; it is sufficient that something valuable flows from the person to whom it is made, or that he suffers some prejudice or inconvenience, and that the promise is the inducement to the transaction. Indeed, there is a consideration if the promisee, in return for the promise, does anything legal which he is not bound to do, or refrains from doing anything which he has a right to do, whether there is any actual loss or detriment to him or actual benefit to the promisor or not.

*Dorman v. Publix–Saenger–Sparks Theatres*, 135 Fla. 284, 291(1938); *see also Senter v. JPMorgan Chase Bank, N.A.*, 810 F. Supp. 2d 1339, 1346 (S.D. Fla. 2011). The FAC readily meets this test. VOMT effectuated the calls on behalf of Berkley, either itself or through a third-party affiliate. (FAC ¶ 26.) When potential timeshare buyers answered the phone, whichever VOMT-controlled entity occupied the other line, a pre-recorded voice identified the call as being from POA. (*Id*. ¶ 15.) And the exchange was simple: the called parties, like Wright, were told they would receive a "free cruise" in exchange for their answering the caller's political survey questions. (*Id*. ¶¶ 15, 25, 38.) The breach occurred when, after the survey was completed, Wright was transferred to a live operator who refused to provide him with a free cruise and instead tried extracting fees from him. (*Id*. ¶ 26.) Such surveys unquestionably provide value to the party seeking their answers and are undoubtedly inconvenient (and even annoying) to those who find themselves faced with answering one. This readily shows consideration. And that Wright didn't get the free cruise he was promised upon completion plainly demonstrates VOMT's breach.

In any case, Wright pleads all of the details VOMT claims it needs to answer the FAC. Wright specifies who made the calls, how the Defendants are supposedly structured, what was offered, and how the agreement was breached. VOMT can hardly claim it doesn't understand what these allegations mean or that it is not on "notice" of Wright's claims. *See Swierkiewicz*, 534 U.S. at 512.

Furthermore, and as explained in Section V *infra*, VOMT's assertion that commonality is defeated (and consideration supposedly inadequately pled) because the FAC leaves open the possibility that while Wright was promised a free cruise, other customers may have been offered different consideration (such as land-based vacations), is not a serious argument. Notably, VOMT refuses to specify a single alternative, and given the automated nature of the call, one is unlikely. And, even if variances in the form of consideration existed, which is unproven at this point, that wouldn't show an absence of consideration—just the opposite. As will be explained at the appropriate time, such variances wouldn't have any meaningful effect on certification. At this stage, however, this inquiry is improper. *See Lehman Bros. Holdings, Inc. v. Hirota*, No. 806 CV 2030T24, 2007 WL 1471690, at *6 (M.D. Fla. May 21, 2007) (12(b)(6) standard "is not whether [] plaintiff may ultimately prevail on its theory, 'but whether allegations are sufficient to allow [plaintiff] to conduct discovery in an attempt to prove [his] allegations.'") (quoting *Jackson v. Hosp. Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579-80 (11th Cir. 1986)); *see also Buslepp v. Improv Miami, Inc.*, No. 12-60171, 2012 WL 4932692, at *2, fn 2 (S.D. Fla. Oct. 16, 2012) (holding that the "factual allegations were sufficient" at this stage of the litigation and that any remaining facts could be "more specifically identif[ied]…during discovery"). Thus, Wright identifies the consideration exchanged.

**B. Wright plainly identifies the party that called him.**

VOMT next pretends that the FAC pleads that multiple parties called him simultaneously. (Mot. at 8.) It doesn't. Again, the FAC explains that VOMT effectuated the calls on behalf of Berkley,

either by itself or through a third-party affiliate. (FAC ¶ 26.) Thus, when potential timeshare buyers answered the phone and a pre-recorded voice said the call was from POA, that was either VOMT or a VOMT affiliate. (FAC ¶ 15.) As such, VOMT plainly owes free cruises (or whatever other consideration it offered) to people who were called and completed the surveys.

As for VOMT's other supposedly unanswered questions, most of the responses it seeks are in the FAC. For example, Wright claims that he accepted the offer for a free cruise by completing the survey instead of hanging up the phone. (FAC ¶ 25.) VOMT breached by failing to offer him the promised cruise. (*Id.*) Thus, because the details VOMT seeks are either already in the FAC or plainly irrelevant, dismissal on these grounds should be rejected as well.

## III. VOMT's Assertion that the Contract to Provide a Free Cruise is Void Due to the Illegality of the Phone Call that Lead to it Being Offered is so Meritless that its Inclusion in its Brief Undercuts the Credibility of VOMT's Other Arguments.

Its standard attacks failing, VOMT asserts that if the telephone calls that supposedly lead to the contract were themselves unlawful, then it follows that any contract formed thereunder was void as against public policy. Based on this "logic," VOMT contends that Wright's breach of contract claim fail because they seek to enforce a void agreement. (Mot. at 9-11.)

VOMT's argument is absurd. While VOMT acknowledges that only "an agreement which violates a statute, or which cannot be performed without violating a statute, is illegal and void, and will not be enforced" (*id.* at 10), it fails to identify *any* supposed statute that enforcing VOMT's promise of a free cruise would violate.[4] Of course, nothing about the agreement at issue here offends the TCPA, which simply prohibits making the calls, not agreements reached when such calls are

---

[4]    To the extent VOMT persists in asserting that the illegality of the call voids any promises made during the call, the absurdity of such results extend well beyond this case. For example, a signatory to a real estate deal may speed in his car on the way to signing a land contract. Such unlawful conduct may have facilitated the deal (especially say, for example, if the contract had to be executed by a specific deadline), but its effect on the agreement is non-existent. The speeding simply has nothing to do with the contract and cannot be used by the signer of all people to claim the contract is void.

placed. And more generally, nothing about providing a free cruise in exchange for completing a survey is itself illegal. Perhaps had the offer been for a "free cruise" to Cuba or Iran or the Moon—or some other Country or area where travel by Americans is legally restricted in some way—then VOMT's argument would potentially hold water. As it stands, it doesn't.

Furthermore, VOMT grossly confuses the concept of contract illegality. As VOMT's own cases explain, illegality doesn't void an agreement unless the contract actually calls for an illegal outcome. *See Local No. 234 of United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada v. Henley & Beckwith, Inc.*, 66 So. 2d 818, 821 (Fla. 1953) (refusing to enforce a contract that barred the hiring of non-union workers—in express violation of Florida law); *see also Ekonomou v. Glenn Wright Const. & Dev., Inc.*, 30 So. 3d 660 (Fla. Dist. Ct. App. 2010) (voiding a contract that schemed to defraud lenders by providing fake contracts for the sale of property to influence lenders to loan money to the developer). VOMT cannot (and does not) cite to *any* law that would be violated by requiring VOMT to make good on its promise of a free cruise here.[5]

In reality, and as demonstrated by *United Realty Corp. v. Green Valley Acres, Inc., II*, 792 F.2d 1555 (11th Cir. 1986), a contract is still enforceable, even where unlawful acts help lead to the formation or fulfillment of the agreement. There, land developers sought to void a commission agreement with a broker, claiming that it shouldn't have to pay certain commissions because the broker had been cited for using misleading sales tactics. In upholding the agreement, the Court reasoned that, "the brokerage contract and the land sale plan both were legal. The only illegality was in the method employed to effectuate some of the sales and that fault was the responsibility, at least in part, of the developers." *Id.* at 1158. Thus, absent illegality in the contract for a free cruise,

---

[5]     Relatedly, VOMT's argument wholly ignores the fact that, if true, it necessarily means that VOMT has been collecting monies and other exchange on contracts made void by its own wrongdoing—something no business is allowed to do. *See Neiman v. Provident Life & Accident Ins. Co.*, 217 F. Supp. 2d 1281, 1289 (S.D. Fla. 2002) (party cannot benefit from contract voided by virtue of its own wrongful acts). Should VOMT's arguments prevail, Plaintiff requests leave to add a claim for unjust enrichment based on VOMT's assertions.

VOMT's argument is lacking, and the Court should reject any arguments based on its supposed application to this case.

**IV. VOMT's Assertions that it Has No Liability for Calls Made By its "Agents, Affiliates, and/or Employees Working on its Behalf" is Wrong—All Parties Who Cause Unauthorized Calls To Be Made Are Liable Under The TCPA.**

VOMT further attacks Wright's TCPA claim on the grounds that the FAC leaves open the possibility that not VOMT, but rather VOMT's "agents, affiliates, and/or employees", made the unauthorized calls. (Mot. at 11.) Specifically, VOMT insists that it can only be found liable for such calls if it's proven that VOMT directed and controlled the substance of the messages. (*Id.* at 12.) VOMT is mistaken: It is liable under the TCPA irrespective of any express allegations of direction or control over the calls, which the FAC includes in any case.[6/7]

First, accepting VOMT's reading would allow companies to disregard the TCPA with reckless abandon by hiring judgment proof third-parties to place the offending calls. Faced with a different but somewhat related question—whether companies can be found liable where their independent contractors, as opposed to their agents or employees, made the offending calls—the Sixth Circuit in *Charvat v. EchoStar Satellite LLC et al.*, 630 F.3d 459, 466 (6th Cir. 2010),[8] referred its case to the Federal Communications Commission ("FCC") where the matter remains pending. The FCC sought public comment, to which the Federal Trade Commission ("FTC") has replied, in part, by explaining:

As detailed in the FTC's May 4, 2011 Comment, the plain meaning of the law and its

---

[6] The FAC expressly alleges that VOMT placed the calls on behalf of Berkley. (FAC ¶ 26.) Thus, if any Defendant were in a position to argue that the FAC requires allegations of direction and control, it is Berkley, not VOMT. Notably, Berkley declined to move for dismissal as the FAC plainly details how Berkley is liable for calls made by VOMT (which includes VOMT's agents, affiliates, and/or employees.)

[7] VOMT's related assertion that Wright must establish that he was "charged for the call" to satisfy his pleading requirements (Mot. at 11) also misrepresents the law. "In order to establish a violation of the TCPA," a plaintiff need only "demonstrate that a defendant called or texted a number assigned to a cellular telephone service using an automatic telephone dialing system". *Buslepp*, 2012 WL 4932692, at *2; (citing *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1318-19 (S.D. Fla. 2012)).

[8] Notably, *Charvat* presumed that businesses would face liability for calls made on their behalves by their agents and employees, and only struggled with whether liability could flow from independent contractors.

> regulations supports holding sellers liable for calls made for the seller's benefit. If the FCC were to construe "on behalf of" too narrowly, enforcers of the TCPA would be able to sue only the telemarketers who actually placed the calls. This would thwart law enforcement efforts in several different ways. First, as we have learned from our telemarketing law enforcement experience, sellers often hire telemarketers who are judgment-proof or will go out of business if sued, leaving no recourse for injured consumers. Also, sellers sometimes hire telemarketers who spoof or hide their identities, thereby making enforcement difficult or impossible…if sellers are not held liable for the ways in which their marketers promote sellers' goods or services, law enforcers will be unable to reduce effectively the number of privacy invasions resulting from Do Not Call and robocall violations.

Reply of FTC, *In re Petitions Seeking Rulings on Certain Definitions Under the Telephone Consumer Protection Act of 1991 and its Related Rules*, CG Dkt No. 11-50; *see also Account. Outsourcing, LLC v. Verizon Wireless*, 329 F. Supp .2d 789, 805–06 (M.D. La. 2004) (analyzing blast fax case and explaining that "[i]nterpreting the TCPA to exempt either fax broadcasters or advertisers would effectively allow advertisers to make an end-run around the TCPA's prohibitions."). Hence, as explained by the FTC, VOMT's reading of the law would gut the ability to enforce the TCPA, undermining its entire purpose.

In light of such an absurd result, courts have routinely found that businesses could be liable under the TCPA even where the calls are made on their behalves. *See Manfred*, 2012 WL 6102071, at *3 (finding plaintiff adequately stated a claim under § 227(b)(1)(A) where he alleged that "[d]efendant Bennett Law was acting on behalf of [d]efendant Wal–Mart and, thus, that both [had] violated the TCPA"); *In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1256-58 (S.D. Cal. 2012) ("[C]ase law and a reasonable reading of the statute indicate that [defendant] should not be allowed to avoid TCPA liability merely because it hired a different firm to send advertisements to its customers."); *Kramer*, 759 F. Supp. 2d at 1171-72 (rejecting motion to dismiss in light of allegations describing how Autobytel "contracted with LeadClick, who thereafter contracted with B2Mobile, for the purpose of advertising Autobytel's products and services through spam text messages"); *Mey v.*

*Pinnacle Sec., LLC*, No. 5:11CV47, 2012 WL 4009718, at *5 (N.D.W. Va. Sept. 12, 2012) (finding defendant could be liable for calls made by its lead-generating company if the lead company "acted as an agent" and the defendant "controlled or had the right to control them and, more specifically, the manner and means of the [solicitation] campaign they conducted.").[9]

VOMT presents a total of two cases to counterbalance this weight of authority. *Ashland Hosp. Corp. v. Int'l Bhd. of Elec. Workers Local 575*, is wildly off-point. In dismissing a hospital's suit against a union for calls placed by union members, the court explained that the hospital had "never received a call from an [ATDS] or an artificial or prerecorded voice as required under the statute" but instead, "each call received was from a live caller." 807 F. Supp. 2d 633, 642 (E.D. Ky. 2011). This obviously differs from the instant case where use of an autodialer or pre-recorded voice isn't at issue.

*Thomas v. Taco Bell Corp.*, No. SACV 09-01097-CJC, 2012 WL 3047351 (C.D. Cal. June 25, 2012) is likewise inapposite. In that case, the court held that businesses that don't actually make the calls must direct and control their substance to face TCPA liability. *Id.* at 4. Deciding the matter on summary judgment (while denying plaintiff's discovery) the *Thomas* Court determined that it was undisputed that Taco Bell had no direction or control over text messages sent by a franchise association. *Id.* at 6. This is a far cry from the instant case, where VOMT is alleged to have made the calls, and its control over its own agents, employees, and affiliates cannot be seriously questioned. (*See* FAC ¶¶ 1, 13, 22, 33.)[10] Moreover, given that it is at odds with nearly every other court reviewing this issue, *Thomas* is presently under appeal in the Ninth Circuit.

---

[9]     *See also Kazemi v. Payless Shoesource*, Case No. C09-5142MHP, 2010 WL 963225, at *3 (N.D. Cal. 2010) (upholding the complaint for violations of both Sections 227(b)(1)(A) and 227(c)); *Martin v. Cellco P'ship*, No. 12 C 5147, 2012 WL 5048854, at *2 (N.D. Ill. Oct. 18, 2012) (denying motion to dismiss claiming a third party, not Defendant, sent the challenged messages on Defendant's behalf); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009) (assuming that Simon & Schuster had sent the messages even though a different company, ipsh!net, had actually made them on its behalf).

[10]     To the extent this Court disagrees, Wright can readily amend to include allegations demonstrating VOMT's direction and control. Notably, though it complains that the FAC lacks sufficient detail to allow it to

Accordingly, almost every court addressing this question has reached the conclusion urged by the FTC—that companies like VOMT can't escape TCPA liability by claiming they paid a third party to actually place the calls. This Court should similarly find VOMT's assertions lacking.

**V. VOMT's Attacks on Class Certification are Premature, Fail to Show that Commonality is Defeated By Differences in the Type of Incentive Falsely Offered or by the Presence of Different State Laws, and Neglect to Articulate Even a Single Individualized Issue that Would Prevent Certification of Wright's TCPA Claims.**

VOMT next seeks dismissal of the class allegations. (Mot. at 13.) VOMT claims that certification is impossible in light of differences between the type of consideration offered to the class members and supposed differences in the various state laws that potentially apply to VOMT's conduct. VOMT further contends that certification of the TCPA claim isn't possible in light of supposedly numerous—though tellingly unspecified—individualized questions. These arguments are both procedurally improper and factually incorrect.

**A. Wright is not required to prove class certification at the pleadings stage.**

As an initial matter, it is premature to determine whether Wright's proposed Classes can be certified, whether he is an adequate representative, or whether his claims are typical or common. *See Miller v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2008) ("the pleadings alone are often not sufficient to establish whether class certification is proper, and the district court will need to go beyond the pleadings and permit some discovery… to determine whether a class may be certified"); *see also Manno v. Healthcare Revenue Recovery Grp., LLC*, No. 11-61357, 2012 WL 4192987, at *3 (S.D. Fla. Sept. 18, 2012) (citing *Drossin v. Nat'l Action Fin. Servs., Inc.*, No. 07-61873, 2008 WL 5381815, at *3–4 (S.D. Fla. Dec. 19, 2008)). Thus, because "the shape and form of a class action evolves only through the process of discovery . . . it is premature to [dispose of class allegations]

---

answer, VOMT apparently has enough notice of the claims to have recently provided Wright's counsel with discovery—two contracts showing that it, at least in part, delegated the duty of placing the calls to two shell companies—both of which supposedly operate out of VOMT's very headquarters and directly receive funds from VOMT to cover payments made to call centers on VOMT's behalf.

before the claim has taken form." *Motisola Malikha Abdallah v. Coca-Cola Co.*, No. 1:98-cv-3679, 1999 WL 527835, at *1 (N.D. Ga. July 16, 1999); *see also Kelly v. SabreTech Inc.*, 195 F.R.D. 48, 52 (S.D. Fla. 1999); *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1273 (11th Cir. 2000) ("Rule 23(c)(1) specifically empowers district courts to alter or amend class certification orders at *any* time prior to a decision on the merits . . . because the scope and contour of a class may change radically as discovery progresses…..").[11]

Accordingly, and consistent with this Court's Scheduling Order, which set February 18, 2013 for the close of class discovery and March 22, 2013 as the deadline for Wright to move for certification, this Court should defer any ruling on class certification until the appropriate time.

### B. VOMT fails to cite any differences in state laws or in the type of consideration provided that would defeat certification.

VOMT asserts that "potentially numerous applicable state contract laws" prevent certification. (Mot. at 15.) This ignores that nationwide breach of contract classes are readily certifiable. *See Indianer v. Franklin Life Ins. Co.*, 113 F.R.D. 595, 607 (S.D. Fla. 1986) ("It would be wrong to conclude that breach of contract claims are never appropriate for nationwide class treatment."); *Kleiner v. First Nat'l Bank of Atlanta,* 97 F.R.D. 683, 693 (N.D. Ga. 1983) ("If breach of contract cases were meant to be excluded from [Rule 23's] coverage, Congress would have so specified."). As the Eleventh Circuit has explained, "[a] breach is a breach is a breach, whether you are on the sunny shores of California or enjoying a sweet autumn breeze in New Jersey." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1263 (11th Cir. 2004) *abrogated in part on other grounds by Bridge v. Phoenix Bond*

---

[11]     Deferring certification to allow for appropriate discovery is hardly a novel approach. *See Newport v. Dell Inc.*, No. CIV 08-096, 2009 WL 1636248, *12 (D. Ariz. June 9, 2009); *Rahman v. Smith & Wollensky Rest. Grp.,* Inc., No. 06 Civ. 6918, 2008 WL 161230 (S.D.N.Y. Jan. 16, 2008); *Holtzman v. Caplice*, No. 07-cv-7279, 2008 WL 2168762, at *2-3 (N.D. Ill. May 23, 2008) (Rule 23 arguments raised on the pleadings are disfavored by the courts as both premature and "not a proper subject for a motion to dismiss."); *see also* WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE, CIVIL 3D § 1798 ("[c]ompliance with the Rule 23 prerequisites theoretically should not be tested by a motion to dismiss").

*& Indem. Co.*, 553 U.S. 639 (2008). In particular, breach of contract classes are certifiable when the conduct arises from a standardized practice or policy directed to all class members or in cases of form contracts with little individual distinction. *See In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 677 (S.D. Fla. 2011) (finding a breach of contract class certifiable when "the agreements at issue…were not the product of any individual negotiation" and where plaintiffs would not be required "to prove a variety of individual circumstances supporting the breach, [a]s… "uniform conduct [was] directed at all members of the class.").

Wright's breach of contract claims here arise from standardized "robo-calls" made by VOMT to Wright and the other class members. (FAC ¶ 38). All of these calls originated as automated recordings, all offered the same terms (a "free cruise" or other valuable incentive in exchange for taking the Defendants' survey), all were performed by completing the survey, and all were breached when the free cruise or other item wasn't provided. (*See id* ¶¶ 13, 15, 20-22, 38.) Additionally, each member of the class who chose to accept the contract and perform under it did so.[12] As such, Wright's Breach of Contract Class is properly certifiable.[13]

In the end, VOMT fails to provide any discussion as to how relevant state contract laws might in fact differ or render the class uncertifiable, and the Court shouldn't venture to guess. *See Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 671-72 (S.D. Fla. 1997) (observing that, "absent evidence to the

---

[12] VOMT's cited case of *Vega v. T-Mobile USA, Inc.* is therefore off-point. In *Vega*, the class members' claims depended on individualized facts and circumstances such as the date each employee was hired, the specific information the employee was told and agreed to at the time of hiring, and how the employee's understanding changed over time. 564 F.3d 1256, 1272 (11th Cir. 2009). Moreover, *Vega* did not address any of these issues on a motion to dismiss, as VOMT requests the Court to do here, but appropriately "following the close of all discovery" and briefing on class certification. *Id.* at 1263. As such, *Vega* doesn't support dismissal of the complaint based on any supposed infirmity affecting the class allegations.

[13] VOMT's assertion that the FAC "demonstrates that every contract was likely different" and that the "promised consideration seems to vary" (Mot. at 17) is also baseless. The fact that the alleged consideration *may* have varied (perhaps VOMT offered a land-based vacation)—there is no evidence at this point that it did—is irrelevant. In all cases, VOMT falsely promised an item that it wholly failed to provide. Thus, Wright alleges that the circumstances surrounding the contract and the type of consideration offered are materially the same for everyone. To the extent discovery shows that the consideration offered was different in any meaningful sense, the Class Definition can be modified at the appropriate time. *See Bush*, 221 F.3d at 1273.

contrary, it is unlikely that the application of Florida's rules of contract interpretation would be any different from any other state's rules or adversely affect any class member's substantive rights"). Indeed, no state's contract laws would seemingly excuse VOMT for its false promises. Rather, as courts have found questions of contract breaches to be matters of contract interpretation, differences in state laws are largely immaterial. *See id.* at 672 (holding that determination of a breach of contract "appears to be a pure and simple question of contract interpretation which should not vary from state to state."); *Kleiner*, 97 F.R.D. at 694 ("the application of various state laws would not be a bar where, as here, the general policies underlying common law rules of contract interpretation tend to be uniform."). And whether Defendants "breached that obligation[,will be] a question common to the class". *See Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003) *aff'd sub nom. Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005) (rejecting argument that "each breach of contract claim raised an individual issue" because the "agreements were materially similar"). As such, VOMT's arguments against certifying the breach of contract claim fails.

**C. Wright's TCPA claims are similarly certifiable.**

For its final line of attack, VOMT attempts to argue that the Court cannot certify Wright's TCPA claims because (1) they are "too broad" and would supposedly "require an inordinate number of individualized determinations to ascertain class membership[,]" (2) Wright hasn't identified common questions of law or fact, and (3) issues of consent will inevitably preclude class certification. (Mot. 18-20.) None of these arguments are persuasive.

First, VOMT can't name a single individual inquiry required in this case, let alone an "inordinate number." Instead, VOMT opts for blanket statements like Wright's TCPA Class would require the Court to make individual inquires, "especially as to matters of proof and reliance" (*id*. at 18)— overlooking that the TCPA doesn't even have a reliance element. *See Buslepp*, 2012 WL 1560408, at

*1-2 (rejecting argument that "the TCPA is not suitable for class representation" and further explaining that a TCPA violation will result where plaintiff "demonstrate[s] that a defendant called or texted a number assigned to a cellular telephone service using an automatic telephone dialing system"). VOMT similarly asserts that individual issues will arise because it "will be incumbent upon Plaintiff to demonstrate that Defendants acted knowingly and willfully." (Mot. at 18.) This is also incorrect. "'The TCPA is essentially a strict liability statute' that 'does not require any intent for liability except when awarding treble damages.'" *Breslow*, 875 F. Supp. 2d at 1318 (quoting *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011); *Penzer v. Transp. Ins. Co.*, 545 F.3d 1303, 1311 (11th Cir. 2008)); *see also* 47 U.S.C. § 227(b)(3)(C). As such, although Wright intends to show that Defendants' conduct was willful and knowing, such a demonstration is unnecessary for certification purposes (and can be proved commonly in any case).

VOMT's related argument that Wright fails to raise common questions of law is refuted by the FAC, which alleges that common issues of law and fact exist regarding, *inter alia*, whether: (i) Defendants used an automated dialing system in placing phone calls, (ii) the TCPA Class is entitled to treble damages, and (iii) members of the TCPA Class provided prior express consent to receive robocalls from Defendants. (FAC ¶ 29.) VOMT's argument that these common questions have nothing to do with the class members' alleged injuries or the specific conduct of each Defendant is beside the point. Each class member who suffered a violation of the TCPA (by receiving an unauthorized telemarketing call from Defendants) necessarily has been injured under the TCPA—by having their privacy violated and, as a result, economic harm incurred. (FAC ¶ 35.)

As such, this argument similarly fails.[14]

---

[14]     VOMT's reliance on *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) is misplaced. Unlike *Dukes*, VOMT's TCPA violations result from the exact same acts—mass robocalls to the class members—and caused the exact same injury—the invasion of each class members' privacy rights. No individual determinations of harm will be necessary. *See Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*, 281 F.R.D. 327, 333

Finally, VOMT's assertion that the issue of consent will preclude class certification is a nonstarter. Neither Defendant has provided any evidence of consent, which apparently wasn't given by anyone. VOMT can't seize upon such hypothetical individualized issues. *See Silbaugh v. Viking Magazine Servs.*, 278 F.R.D. 389, 394 (N.D. Ohio 2012) ("Having produced no evidence that any individual consented to receive text messages in response to plaintiff's presentation of [defendant's] testimony, defendant is unable to realistically argue that individual issues of consent outweigh commonality."); *see also Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 806-07 (N.D. Ill. 2008) ("question of consent may rightly be understood as a common question" under the TCPA).

In the end, Wright's TCPA claims are readily certified as "suitable for class representation." *Buslepp*, 2012 WL 1560408, at *2 (citing *Penzer*, 605 F.3d at 1113-14); *Hinman*, 545 F. Supp. 2d at 806-07 (certifying class under the TCPA where thousands of calls were made as part of an "organized program" and defendants engaged in a "standardized course of conduct."); *CE Design v. Beaty Const., Inc.*, No. 07 C 3340, 2009 WL 192481, at *5 (N.D. Ill. Jan. 26, 2009) (finding typicality where plaintiffs' claims were "based upon the same legal theory, i.e. violation of the TCPA."); *Strickler v. Bijora, Inc.*, No. 11 CV 3468, Dkt. 67 (N.D. Ill. Oct. 30, 2012) (certifying class under TCPA for defendant's unlawful text message spam); *Agne v. Papa John's Int'l, Inc.*, No. C10-1139-JCC, 2012 WL 5473719 (W.D. Wash. Nov. 9, 2012); *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 651 (W.D. Wash. 2007) (certifying nationwide classes under the TCPA).

Put plainly, this Court should reject VOMT's attempt to defeat class certification, especially so early in the case.

## CONCLUSION

---

(E.D. Wis. 2012) (granting certification where the class asserted "the same injury: faxes sent to potential class members in violation of the TCPA."); *Smith v. Microsoft Corp.*, No. 11-cv-1958, 2012 WL 2975712, at *6 (S.D. Cal. July 20, 2012) (finding plaintiff's TCPA injury was properly "premised on the invasion of his privacy, even absent any economic harm."). Notably, VOMT doesn't provide a single example of what "highly individualized and specific facts" would supposedly encumber Wright's TCPA Class here.

For the reasons stated above, Plaintiff respectfully requests that the Court (i) deny VOMT's Motion in its entirety, (ii) permit oral argument, and (iii) grant any further relief that the Court deems appropriate.

Respectfully submitted,

**DAVID WRIGHT**, individually and on behalf of all those similarly situated,

Dated: December 18, 2012

By: /s/ Rafey S. Balabanian_____

Rafey S. Balabanian (*Pro Hac Vice*)
Eve-Lynn J. Rapp (*Pro Hac Vice*)
Edelson McGuire, LLC
350 North LaSalle, Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378
rbalabanian@edelson.com
erapp@edelson.com

Scott D. Owens (Fla. Bar No. 0597651)
Law Office of Scott D. Owens, Esq.
664 E. Hallandale Beach Boulevard
Hallandale, Florida 33009
Scott@ScottDOwens.com

*Attorneys for Plaintiff and the putative class*

**CERTIFICATE OF SERVICE**

      I, Scott D. Owens, an attorney, hereby certify that on December 18, 2012, I served the above and foregoing ***Plaintiff's Opposition to Defendant Vacation Ownership Marketing Tours, Inc.'s Motion to Dismiss First Amended Class Action Complaint***, by causing true and accurate copies of such papers to be sent to all counsel of record via the Court's CM/ECF system.

                                     By: /s/  Scott D. Owens_____